UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CESAR VARGAS DIAZ,<br><br>Defendant. | No. 1:16-cr-00070-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S SECOND MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 93) |

Pending before the court is the second motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Cesar Vargas Diaz, seeking a reduction of his sentence. (Doc. No. 93.) The court previously denied defendant Diaz's first motion for compassionate release on September 28, 2020. (Doc. No. 92.) The pending motion, filed January 6, 2021, is based in part on the purported risks posed to defendant Diaz by the ongoing coronavirus ("COVID-19") pandemic in light of his newly diagnosed health conditions and a recent COVID-19 outbreak in the prison where defendant is incarcerated. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On May 5, 2016, an indictment was returned charging defendant Diaz with one count of conspiracy to distribute and to possess with intent to distribute over 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable

1

amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and one count of possession with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 1.) On July 11, 2017, defendant entered his plea of guilty to Count 1 of the indictment. (Doc. No. 44.) On December 4, 2017, the court sentenced defendant to 152 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a 60-month term of supervised release. (Doc. No. 44.) The court also imposed the mandatory $100 special assessment. (*Id.*)

Defendant Diaz is currently incarcerated at the Federal Correctional Institution, Lompoc ("FCI Lompoc"). (Doc. Nos. 93 at 2; 99 at 2.) Defendant has served approximately 59 months, or 38.8% of his full 152-month custodial sentence. (Doc. Nos. 99 at 2; 99-1 at 4.) Accounting for good time credit, his projected release date is June 20, 2027. (Doc. Nos. 99 at 2; 99-1 at 2.)

As noted above, on August 11, 2020, defendant filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 74.) On September 28, 2020, the court denied that motion on the merits, concluding that defendant Diaz had failed to demonstrate extraordinary and compelling reasons for compassionate release and had also failed to show that a reduction of his sentence would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). (Doc. No. 92 at 11.)

Thereafter, on January 6, 2021, defendant filed his second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and therein once again seeks a reduction of his sentence. (Doc. No. 93.) On January 28, 2021, the government filed its opposition to the pending motion, and on February 11, 2021, defendant filed his reply thereto. (Doc. Nos. 99, 103.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*,

452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that —
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13

---

which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *Aruda*, 2021 WL 1307884, at *2.

may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See*

*United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that he exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 93 at 8; *see* Doc. No. 93.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

/////

**B.   Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda,* U.S.S.G. § 1B1.13 may inform its determination but this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*.  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

7

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Here, defendant Diaz argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist now, compared to eight months ago when the court denied his first motion for compassionate release, because he has since been prescribed a medication that is used to treat hypertension and he now has a body mass index (BMI) of 31, which is identified by the U.S. Centers for Disease Control and Prevention ("CDC") to be a medical condition that may place individuals at a higher risk for suffering severe illness from COVID-19. (Doc. No. 93 at 6–7, 9) (citing Centers for Disease Control, *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021)).

---

[4] Because defendant Diaz is only 38 years old (Doc No. 50 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

As in his first motion, defendant Diaz again asserts that he suffers from a blood clotting disorder and has experienced a persistent embolism in his arm after he contracted COVID-19 in April 2020. (*Id.* at 7–8, 10.) According to defendant, considering all of his co-morbidities, he is at a higher risk of suffering a severe illness if he were to contract COVID-19 again. (*Id.* at 7–8, 10.)

In its opposition to the pending motion, the government does not dispute that defendant suffers from obesity or that he developed a blood clot in his arm in connection with his having contracted COVID-19 for which condition he continues to receive treatment. (Doc. No. 99 at 7–8.) The government does assert, however, that defendant's "recent medical records do not indicate a diagnosis of hypertension;" they merely reflect instead that he has been prescribed a medication that is also used to treat hypertension in patients who have that condition. (*Id.* at 7 (citing Doc. No. 102-1 at 79–81).) Accordingly, the government contends that defendant's current medical conditions are "being managed and well controlled by the treatment he is receiving from" FCI Lompoc medical staff. (*Id.* at 9.) In addition, the government argues that defendant's expressed fear that he may not survive were he to again contract COVID-19 is belied by "the reality that, even with his combination of health concerns, infection did not result in serious complications." (*Id.* at 10.)

In reply, defendant Diaz notes that the medical records provided by the government support his argument that he suffers from obesity and elevated blood pressure, for which he is treated with anti-hypertensive drugs. (Doc. No. 103 at 4.) Defendant reiterates his arguments that he has previously suffered a severe case of COVID-19 and is a high risk of "an extremely severe case if reinfected." (*Id.* at 5.)

This court previously assessed defendant Diaz's medical conditions, including his then-existing blood clot condition stemming from his prior COVID-19 infection, and will not repeat that complete assessment here. (Doc. No. 92 at 9–10.) It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions, including pulmonary hypertension and obesity with a BMI of 30 or higher, "can be more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-

9

medical-conditions.html (last updated May 31, 2021); (Doc. Nos. 93 at 7; 99 at 7–8.) The court finds that the medical records submitted in support of the pending motion reflect that defendant has a BMI exceeding 30. (Doc. No. 102-1 at 8.) Although the medical records do not specify whether defendant has primary or secondary hypertension, the records show that defendant was diagnosed with hypertension and prescribed medication to treat that condition. (Doc. No. 102-1 at 14, 43—sealed.) Defendant has therefore shown that because he suffers from these medical conditions, he is at an increased risk for suffering severe illness if he were to contract COVID-19 again.

However, as this court noted in its prior order denying compassionate release in this case, defendant Diaz has not shown that FCI Lompoc is unable to monitor his condition and provide adequate medical care for him. (Doc. No. 92 at 10–11); *see United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling). Notably, defendant does not dispute that FCI Lompoc is effectively treating his blood clot and his hypertension, as reflected in his medical records. Indeed, defendant has made no showing whatsoever that he is being denied necessary treatment or prescriptions or that necessary treatment of his hypertension or blood clot is being delayed in any way. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where the defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 516 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills might impact the defendant's ability to self-manage his medical conditions).

Moreover, as in his first motion for compassionate release, defendant asserted in conclusory fashion that he cannot provide self-care at FCI Lompoc by taking "extra precautions to maintain hygiene, a sterile environment, and physical distance from others" while in prison. (Doc. No. 93 at 10.) Defendant Diaz has neither persuasively argued nor presented any evidence establishing that the current conditions of his confinement at FCI Lompoc render him unable to adequately provide for his self-care.

The court also notes that according to BOP's website, as of the date of this order, FCI Lompoc is reporting that no inmates or staff members at that prison currently have tested positive for COVID-19. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last visited May 26, 2021).[5] In addition, BOP's website provides data on the number of staff and inmates that have received "full inoculations" (meaning that both doses of a COVID-19 vaccine have been administered), and according to that data, Federal Correctional Complex Lompoc, which includes FCI Lompoc as well as United States Penitentiary Lompoc, is reporting that 226 staff members and 1,178 inmates have been fully inoculated as of that date. (*Id.*)

In light of all of the above, the court concludes that although defendant Diaz suffers from obesity, hypertension, and is being treated for a blood clot in his arm, medical conditions that may place him at higher risk of becoming seriously ill if he were to be infected again by COVID-19, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A). Therefore, his pending motion will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Diaz's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned remains unpersuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing

/////

---

[5] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

The court already rejected defendant's arguments with regard to consideration of these sentencing factors in its order denying plaintiff's first motion for compassionate release. (Doc. No. 92.) Because defendant does not raise any new arguments in this regard, the court will not repeat its analysis here and again finds that a reduction in defendant's sentence would not be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

## CONCLUSION

Because defendant Diaz has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that the requested reduction in his sentence of imprisonment would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 93) is denied.

IT IS SO ORDERED.

Dated: **May 26, 2021**

UNITED STATES DISTRICT JUDGE

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

12