UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CESAR VARGAS DIAZ,<br><br>Defendant. | No. 1:16-cr-00070-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S THIRD MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 110) |

Pending before the court is defendant Cesar Vargas Diaz's *pro se* third motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 93.) The court has previously denied defendant Diaz's first and second motions for compassionate release on September 28, 2020 and May 27, 2021. (Doc. Nos. 92, 104.) The pending motion, filed September 17, 2021, is based in part on the purported risks posed to defendant Diaz by the ongoing coronavirus ("COVID-19") pandemic in light of his alleged serious adverse reaction to the first dose of the COVID-19 Moderna vaccine. For the reasons explained below, defendant's pending motion will also be denied.

**BACKGROUND**

On May 5, 2016, an indictment was returned charging defendant Diaz with one count of conspiracy to distribute and to possess with intent to distribute over 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable

1  amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and one count of
2  possession with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or
3  more of a mixture or substance containing a detectable amount of methamphetamine in violation
4  of 21 U.S.C. § 841(a)(1).  (Doc. No. 1.)  On July 11, 2017, defendant entered his plea of guilty to
5  Count 1 of the indictment.  (Doc. No. 44.)  On December 4, 2017, the court sentenced defendant
6  to 152 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a
7  60-month term of supervised release.  (Doc. No. 44.)  The court also imposed the mandatory $100
8  special assessment.  (*Id.*)

9  Defendant Diaz is currently incarcerated at the Federal Correctional Institution, Lompoc
10 ("FCI Lompoc").  (Doc. Nos. 110 at 3; 116 at 2.)  Defendant has served approximately 67
11 months, or 44.1% of his full 152-month custodial sentence.  (Doc. Nos. 116 at 2; 116-1 at 4.)
12 Accounting for good time credit, his projected release date is March 21, 2027.  (Doc. Nos. 116 at
13 2; 116-1 at 2.)

14 As noted above, on August 11, 2020, defendant filed his first motion for compassionate
15 release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 74.)  On September 28, 2020, the court
16 denied that motion on the merits, concluding that defendant Diaz had failed to demonstrate
17 extraordinary and compelling reasons for compassionate release and had also failed to show that a
18 reduction of his sentence would be consistent with the sentencing factors set forth in 18 U.S.C.
19 § 3553(a).  (Doc. No. 92 at 11.)

20 On January 6, 2021, defendant filed his second motion for compassionate release pursuant
21 to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 93.)  On May 27, 2021, the court denied that motion on
22 the merits, concluding that defendant Diaz had failed to demonstrate extraordinary and
23 compelling reasons for compassionate release and had not presented any new arguments to show
24 that a reduction of his sentence would be consistent with the sentencing factors set forth in 18
25 U.S.C. § 3553(a).  (Doc. No. 104.)  Defendant filed a notice of appeal on June 10, 2021, but
26 ultimately moved for voluntary dismissal of the appeal, which was granted by the Ninth Circuit
27 on August 4, 2021.  (Doc. Nos. 105, 109.)
28 /////

Thereafter, on September 17, 2021, defendant proceeded *pro se* and filed a third motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) therein once again seeking a reduction of his sentence. (Doc. No. 110.) On September 30, 2021, defendant Diaz filed a motion to appoint counsel for his compassionate release motion, which this court denied in a minute order issued on October 19, 2021. (Doc. Nos. 112, 120.) On October 15, 2021, the government filed its opposition to the pending motion, and on November 1, 2021, defendant filed his reply thereto.[1] (Doc. Nos. 116, 121.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018).

/////
/////
/////
/////

---

[1] In his short reply brief, defendant Diaz did not present substantive argument but instead renewed his request for the appointment of counsel in connection with his pending compassionate release motion and also requested an evidentiary hearing. It appears that defendant did not receive the court's October 19, 2021 minute order denying his motion for the appointment of counsel and ordering that defendant proceed *pro se* with the pending motion. (Doc. No. 120.) The court now reiterates that defendant is not entitled to appointed counsel and the court declines to appoint new counsel at this time. Furthermore, the court has reviewed the briefing and attached exhibits, finds the matter appropriate to be decided on the papers, and will deny defendant's unsupported request for an evidentiary hearing in connection with his third motion for compassionate release.

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

---

where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States*

/////

*v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.    Administrative Exhaustion**

The government contends that defendant Diaz failed to exhaust his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 116 at 3, 6.) The government notes that although defendant filed a request for compassionate release with the BOP in June 2020, which was denied in August 2020, the BOP "has not received any *new* request for 'compassionate release.'" (*Id.* at 3, 6.) The government contends that because "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked," defendant was required to file another request with the BOP prior to filing the pending § 3582 motion. (*Id.* at 6 (quoting *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).) Defendant makes no argument regarding administrative remedies in his pending motion. (*See* Doc. No. 110.)

7

In *Keller*, the inmate lodged his first administrative request for a sentence reduction with the warden in July 2020, and subsequently filed a § 3582 motion for compassionate release that was denied by the district court. *Keller*, 2 F.4th at 1281, 1283.  On January 7, 2021, the inmate filed a second administrative request for a sentence reduction with the warden and, without waiting for a response to that administrative request, filed a "Renewed Motion for Compassionate Release" with the district court just eight days later. *Id.* at 1281.  The Ninth Circuit held under these circumstances that the inmate had not exhausted his administrative remedies because "the July 2020 request served as the predicate for Keller's first motion in the district court, which was denied in September 2020, and could not have initiated the administrative process for his January 2021 motion, which was itself premised on Keller's claim of changed circumstances." *Id.* at 1283.

Here, the BOP only has a record of an administrative request for a sentence reduction filed by defendant Diaz in June 2020.  (Doc. No. 116 at 3.)  Because that administrative request was the predicate for defendant Diaz's first compassionate release motion, it cannot be the request of this third subsequent compassionate release motion, which alleges changed circumstances.  *See Keller*, 2 F.4th at 1283.  Defendant has thus failed to properly exhaust his administrative remedies prior to filing the pending motion.

The court therefore denies defendant's third motion for compassionate release for failure to exhaust his administrative remedies.  As discussed below, however, even if defendant Diaz had properly exhausted his administrative remedies, is pending motion fails to demonstrate that "extraordinary and compelling reasons" justify his release.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own

8

motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

9

(E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

Here, defendant Diaz argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist now, compared to just six months ago when the court denied his second motion for compassionate release, because he has since experienced a severe adverse reaction to the first dose of the COVID-19 Moderna vaccine. (Doc. No. 110 at 2.) Defendant contends that he was rushed by ambulance to Lompoc Valley Medical Center (LVMC) where he was "intubated and placed on life support for six days in the ICU," and was advised not to receive the second dose of the Moderna vaccine. (*Id.*) Defendant also contends that he remains at substantial risk from COVID-19 because FCI Lompoc is currently at level 3 of the BOP's tiered approach for infection control measures and because "roughly half of the staff and inmate population refuse to be vaccinated." (*Id.* at 3–4.) According to defendant, his adverse reaction to the Moderna vaccine and the refusal of FCI Lompoc staff and inmates to be vaccinated against COVID, combined with his comorbidities, constitute extraordinary and compelling reasons warranting reduction of his custodial sentence. (*Id.* at 4.)

In its opposition to the pending motion, the government does not dispute that defendant Diaz suffers from a number of medical conditions, including hyperlipemia, elevated blood pressure, unspecified abnormalities of breathing, adverse effects of other drugs, and a Body Mass Index of between 33.0 and 33.9. (Doc. No. 116 at 7.) The government does dispute the

---

[5] Because defendant Diaz is only 39 years old (Doc No. 119 at 1), his age and age-related factors do not play a role in consideration of his pending motion.

seriousness of defendant's reaction to the Moderna vaccine, noting that the medical records indicate defendant was admitted to LVMC for observation and testing the day after he received the vaccine, and was discharged four days later. (*Id.* at 7–8.) The government also notes that LVMC medical records "do not indicate [defendant] Diaz was ever advised not to take the second dose of the Moderna vaccine." (*Id.* at 8 (citing Doc. No. 119 at 161–89—sealed).) The government contends that because defendant Diaz is receiving treatment for his health conditions as needed, defendant's arguments fail to rise to the extent of "extraordinary and compelling reasons" to warrant a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A).

The court previously assessed defendant Diaz's medical conditions, including his then-existing blood clot condition stemming from his prior COVID-19 infection, and will not repeat that complete assessment here. (*See* Doc. Nos. 92 at 9–10; 104 at 9–11.) Indeed, defendant Diaz makes no argument as to his medical conditions other than a passing reference. (Doc. No. 110 at 4.) Defendant's medical records show that he received the first dose of the Moderna vaccine on April 14, 2021 and was admitted to LVMC the following day with "shortness of breath actually of several weeks['] duration, which became intensified with muscle aches throughout body 3–4 hours after a Moderna COVID vaccine." (Doc. No. 119 at 161–63—sealed.) Although defendant's contention that he was intubated and placed on life support during his April 2021 admission to LVMC is not supported by his medical records, those records do note that defendant used an incentive spirometer, a handheld medical device used to help improve lung function by training patients to take slow and deep breaths, during his hospital admission. (*Id.* at 166—sealed.) It remains unclear if defendant Diaz suffered an allergic reaction to the Moderna vaccine, although it appears he suffered some adverse reaction in the form of acute shortness of breath, wheezing, and muscle aches. (*Id.* at 161–66—sealed.) Even assuming defendant did suffer an allergic reaction and cannot safely receive the second dose of the Moderna vaccine, the court finds that circumstance would not rise to the level of an extraordinary and compelling reason for defendant's release. This court previously considered defendant's health conditions and the risks posed by the pandemic and found they did not merit release in the court's prior two orders, first when a COVID vaccine was unavailable and second when the vaccine was available

but defendant had not yet received it at the time the motion briefing was filed.  (Doc. Nos. 92 at 9–10; 104 at 9–11.)  The fact that it may not be recommended by health care providers that defendant Diaz receive a second dose of the vaccine does not change the assessment of the risks posed to him by the COVID-19 pandemic that the court made in its previous orders, because both assessments were made without the consideration that defendant might lower the risks of COVID-19 by becoming vaccinated.  *See United States v. Stepaniuk*, No. 19-cr-00946-BAS-1, 2021 WL 2808729, at *2 (S.D. Cal. July 6, 2021) (finding that defendant's ineligibility for a COVID-19 vaccine did not change the assessment made at the time of sentencing because the pandemic was ongoing at the time and no vaccine was available at the time).

        The court also notes that according to BOP's website, as of the date of this order, FCI Lompoc is reporting that only one inmate and one staff member at that prison currently have tested positive for COVID-19.  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last visited November 29, 2021).[6]  In addition, defendant's arguments as to FCI Lompoc's staff and inmates refusing to receive COVID-19 vaccines is unpersuasive.  BOP's website provides data on the number of staff and inmates that have received "full inoculations" (meaning that both doses of a COVID-19 vaccine have been administered), and according to that data, Federal Correctional Complex Lompoc, which includes FCI Lompoc as well as United States Penitentiary Lompoc, is reporting that 292 staff members and 1,683 inmates[7] have been fully inoculated as of that date.  (*Id.*)  Even assuming that defendant Diaz experienced an adverse allergic reaction to the Moderna vaccine, the high number of vaccinations and low number of active COVID-19 cases at FCI Lompoc decrease the risk posed to him at this time.  *See United States v. Parks*, No. 1:20-cr-00046, 2021 WL 4633816, at *2 (W.D. Va. Oct. 7,

---

[6] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results.  However, there is also no evidence before the court contradicting those reported numbers.

[7] FCC Lompoc has 1,545 total current inmates at this time.  *See* Federal Bureau of Prisons, FCC Lompoc, available at https://www.bop.gov/locations/institutions/lom/ (last visited November 12, 2021).

2021) (holding that defendant's risk of contracting COVID-19 was too low to merit compassionate release even assuming defendant had an allergy to the COVID-19 vaccine because vaccines were available to the institution's inmates and staff and because there were only five confirmed active cases at the time); *United States v. Perry*, — F. Supp. 3d —, 2021 WL 2371719, at *2 (D. Mass. 2021) (denying release because even with some evidence of general vaccine allergies, "the [active COVID] case numbers at FCI Berlin are simply too low to merit the extraordinary relief he seeks").

Furthermore, as this court noted in its prior order denying compassionate release in this case, defendant Diaz has not shown that FCI Lompoc is unable to monitor his conditions and provide adequate medical care for him. (Doc. Nos. 92 at 10–11; 104 at 10–11); *see United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (finding that relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling). Notably, defendant does not dispute that FCI Lompoc is effectively treating his existing medical conditions and sent him for treatment at LVMC in response to his reaction to the Moderna vaccine, as reflected in his medical records. Indeed, defendant has made no showing whatsoever that he is being denied necessary treatment or prescriptions or that necessary treatment of any of his health conditions or medical reactions is being delayed in any way. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where the defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 516 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills might impact the defendant's ability to

self-manage his medical conditions).  Moreover, as in his first two motions for compassionate release, defendant asserted in conclusory fashion that he cannot provide self-care at FCI Lompoc because "[i]ncarcerated people have no control of what air they breathe or how close they sleep to others." (Doc. No. 110 at 3.)  Defendant Diaz has neither persuasively argued nor presented any evidence establishing that the current conditions of his confinement at FCI Lompoc render him unable to adequately provide for his self-care.

In light of all of the above, the court concludes that although defendant Diaz suffers from various medical conditions, including obesity, hypertension, and is being treated for a blood clot in his arm, which may place him at higher risk of becoming seriously ill if he were to be infected again by COVID-19, and although he appears to have suffered some adverse reaction to the first dose of the COVID-19 Moderna vaccine, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A). Therefore, his pending motion will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Diaz's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned remains unpersuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 461 F. Supp. 3d at 979.

The court already rejected defendant's arguments with regard to consideration of these sentencing factors in its order denying plaintiff's first motion for compassionate release.  (Doc.

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

No. 92.) Because defendant does not raise any new arguments in this regard, the court will not repeat its analysis here and again finds that a reduction in defendant's sentence would not be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

## CONCLUSION

Because defendant Diaz has failed to exhaust his administrative remedies and failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that the requested reduction in his sentence of imprisonment would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his third motion for compassionate release (Doc. No. 110) is denied.  The Clerk of Court is directed to serve a copy of this order and the minute order issued on October 19, 2021 (Doc. No. 120) to defendant at his address of record in Lompoc, California as it appears now on the court's docket.

IT IS SO ORDERED.

Dated:  **November 29, 2021**

UNITED STATES DISTRICT JUDGE